## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CIVIL ACTION NO. 06-30032** |
| **VERSUS** | * | **JUDGE JAMES** |
| **JOSE LUIS VERDE          -001**<br>**SAN JUANITA HERNANDEZ   -002** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are motions to suppress filed by defendants, Jose Luis Verde and San Juanita Hernandez. [doc. #s 28 & 29, respectively]. For reasons assigned below, it is recommended that the motions be **DENIED.**

The evidence presented at a hearing held on Wednesday, January 3, 2006, demonstrated as follows. At approximately 1:15 a.m. on July 20, 2006, Trooper Brett Davis of the Louisiana State Police was traveling eastbound on I-20 when he observed a 1992 Chevrolet Van traveling in the same direction in the outside lane. As the cars traversed the Ouachita River bridge, Davis saw the van's driver side tires stray across the dashed center line of the eastbound section of the interstate. Once across the bridge, Davis observed the van's passenger side tires cross the outside fog line at least once. Trooper Davis believed that the driver might have been impaired, tired, or otherwise distracted. Accordingly, after about three miles, he pulled the van over at about milepost 119. Davis asked the driver of the vehicle, Alberto Hernandez, to step out of the van and come over to him. Mr. Hernandez so complied. Trooper Davis questioned Mr. Hernandez regarding any other occupants of the van, and the party's destination. Mr. Hernandez stated that his girlfriend, her two children, and his brother-in-law were in the van. He further stated that he was helping his brother-in-law drive the van, but he was not sure where they were headed. Trooper Davis then approached the passenger side of the vehicle to check the vehicle's registration. He spoke with another passenger, San Jaunita

Hernandez, who confirmed that the van belonged to her brother, Jose Luis Verde, and volunteered that they were headed to Elizabethtown, Kentucky, to visit her uncle. At Davis's request, Jose Luis Verde exited the vehicle. Verde confirmed that they were going to Elizabethtown, Kentucky, to visit his uncle. However, he stated that he did not know where his uncle lived, and that he was going to call him once they got there. Verde further stated that his sister had been dating Alberto Hernandez for about a year. In contrast, Mr. Hernandez recounted that he had been dating Ms. Hernandez for the past three years.[1] Due to the somewhat conflicting stories, and excessive nervousness, Davis believed that the party had been less than truthful.

After speaking with all of the passengers, Trooper Davis ran criminal history checks on Verde and Alberto Hernandez. The results came back completely negative for Verde, and showed only traffic violations and a suspended license for Mr. Hernandez. Trooper Davis then returned all paperwork and issued Mr. Hernandez a verbal warning for improper lane usage and a written citation for driving with a suspended license. By that point, Trooper Davis believed that the passengers were involved in some type of criminal activity. Davis asked Mr. Hernandez if any contraband was in the vehicle and whether he could search the vehicle. Mr. Hernandez denied the presence of contraband and consented to the search. Similar responses were elicited from Mr. Verde, the van owner. Verde also signed a form authorizing the search of the van. (Gov.'t Exh. 1). The length of time between the stop and the execution of the written consent form was roughly 22 minutes.

Louisiana State Trooper Casey Williamson, who had arrived on the scene earlier, assisted with the search of the van. Beneath the van, he observed that the drain holes in the frame had been covered by sheet metal. Williamson removed the seats from the van, and attempted to lift up the

---

[1] Ms. Hernandez stated that she had been dating Alberto Hernandez since the previous October.

carpet. When that proved unsuccessful, Williamson went back under the van and used a hammer to break the compound holding the sheet metal in place. Once it broke loose, Williamson observed a steel cable running the length of the frame rail and a large package. Williamson poked the package with a screwdriver, and a white powder later identified as cocaine spilled out. The passengers were placed under arrest and Mirandized. In response to questioning, Mr. Verde told the troopers how to access the hidden compartment from inside the vehicle and stated that the compartment contained 30 kilograms of cocaine. Mr. Verde and Ms. Hernandez each stated that the drugs belonged to himself or herself and that the others had no knowledge of the drugs.

## LAW AND ANALYSIS

The Fourth Amendment of the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The reasonableness of traffic stop searches and seizures under the Fourth Amendment is analyzed in accordance with the framework set forth by the Supreme Court in *Terry v. Ohio*. 392 U.S. 1 (1968). Under *Terry*, the analysis is two-tiered: (1) whether the officer's action of stopping the vehicle was justified at its inception; and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop. *United States v. Shabazz*, 993 F.2d 431, 435 (5th Cir. 1993)(citing *Terry*, 392 U.S. at 19-20); *United States v. Valadez*, 267 F.3d 395, 398 (5th Cir. 2001).

In *Whren v. United States*, the Supreme Court unanimously upheld a traffic stop in which an officer observed a defendant commit a traffic violation. 517 U.S. 806 (1996). In accordance with its long line of cases, the Supreme Court held that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. The Supreme Court flatly rejected an invitation by the defendant to look to the

subjective motivation of the police officer at the time of the stop. In *Whren*, the court found the stop reasonable under the Fourth Amendment because the officers had probable cause to believe that petitioners had violated the traffic code. The officer had observed the violation firsthand. *Id.* at 818; *see also United States v. Harrison*, 918 F.2d 469 (5th Cir. 1990).

To the extent that defendants challenge the propriety of the initial stop, their claim lacks merit. Pursuant to *Terry* and *Whren*, stopping a vehicle for a traffic violation is justified so long as probable cause exists. *See Whren*, 517 U.S. at 810; *Terry*, 392 U.S. at 19-20. It remains uncontroverted that Trooper Davis observed the van stray partially across the center line and across the outside fog line. In Louisiana, a car which partially leaves its lane of travel and crosses the fog line either at the center of a divided highway or on the right hand shoulder of the road constitutes probable cause to believe that a traffic violation for improper lane use has occurred. *State v. Waters*, 780 So.2d 1053, 1056 (La. 2001)(citing, *State v. Inzina*, 728 So.2d 458, 466 (La. App. 2nd Cir.12/9/98)).[2]

Under the second prong of the *Terry* inquiry, the detention of a vehicle's occupants must be temporary and last no longer than necessary to effectuate the purpose of the stop. *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004)(*en banc*). Included in the list of actions a police officer may take pursuant to a routine traffic stop, are the following: examine the driver's license and registration of the driver and vehicle, and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle was stolen; ask a driver to exit the vehicle; and ask the a driver and any passengers about the purpose and itinerary of their trip and even other unrelated questions. *See generally Brigham*, 382 F.3d at 508; *United*

---

[2] *See also*, La. R. S. 32.79.

4

*States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002); *United States v. Dortch*, 199 F.3d 193, 198 (5th Cir. 1999); *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993). Detention during these actions is reasonable under the Fourth Amendment.

The question before the Court is whether Davis's actions after he legitimately stopped the van were reasonably related to (1) the circumstances that justified the stop, or (2) to dispelling his reasonable suspicion developed during the stop. This is because "a detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Brigham*, 382 F.3d at 507 (citations omitted). It is manifest that through the time that Trooper Davis completed the background checks and issued a citation, the temporary detention and questioning of the defendants did not transgress the protections afforded by the Fourth Amendment. *See, Brigham, supra*.

After returning the party's paperwork, but while still making sure that Mr. Hernandez did not continue driving with his suspended license, Davis asked Mr. Hernandez and Mr. Verde two additional questions: 1) did the van contain any contraband; and 2) could he search the van. To the extent that these questions prolonged the detention, Davis must have had a reasonable suspicion supported by articulable facts that a crime had been or was being committed. *U.S. v. Santiago*, 310 F.3d 336, 341-342 (5th Cir. 2002)(citations omitted). During the hearing, Davis admitted that he had not detected any other criminal activity. Rather, his suspicions were aroused by the party's conflicting stories, the defendants' lack of knowledge of their uncle's address (when that was their professed destination), nervousness, and Mr. Hernandez's failure to make eye contact. Moreover, the defendants were stopped on a known drug corridor at a late hour. *See, U.S. v. Jenson*, 462 F.3d 399, 405 (5th Cir. 2006)(referring to I-20 as a "known drug corridor"). To the extent that it could be argued that the additional questioning extended the detention, which is doubtful, the undersigned finds that given the totality of the circumstances,

the brief extension was reasonable. Supporting this conclusion is the fact that the van occupants voluntarily consented to the ensuing search. *See*, discussion, *infra*.³

In their motions, defendants do not specifically challenge the voluntariness of the consent. However, in an abundance of caution, the court will briefly address this issue. Typically, the government bears the burden of proving voluntary consent by a preponderance of the evidence. *Shabazz*, 993 F.2d at 438 (citing *United States v. Yeagin*, 927 F.2d 798, 800 (5th Cir.1991). However, ". . . the government's burden to prove consent by [a] preponderance of the evidence is not as heavy as it would have been had a Fourth Amendment violation preceded the consent." *United States v. Estrada*, 459 F.3d 627, 633 (5th Cir. 2006) (citing *United States v. Dortch*, 199 F.3d 193, 201 (5th Cir. 1999)).

"The voluntariness of consent is a question of fact to be determined on the totality of the circumstances." *Id.* To make this determination, courts look to the following factors: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police tactics; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) his education level and intelligence; and (6) his belief that no incriminating evidence will be found. *Id.* Although all six factors are relevant, no single factor is dispositive. *Id.*

In the case *sub judice*, the first two factors favor the government because the party's identification and paperwork had been returned to them before their consent was sought and obtained, and there was no evidence of coercive police tactics. The defendants also responded to Trooper's Davis's questions and complied with his instructions, evidencing a willingness to cooperate. No evidence was adduced relative to the fourth and fifth factors. The fact that the contraband was well hidden in a secret compartment not readily visible upon inspection supports

---

³ Mr. Hernandez orally consented to the search. Mr. Verde consented orally and in writing. (*See*, Gov.'t Exh. 1).

a finding that the defendants reasonably believed that no contraband would be found. Upon due consideration of these factors, the court finds that the consent to search was voluntarily conferred.

For the foregoing reasons,

**IT IS RECOMMENDED** that defendants' motions to suppress [doc. #s 28 & 29] be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 8th day of January, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE